The Honorable Charlotte Schexnayder The Honorable Jay Bradford State Representative State Senator State Capitol State Capitol Little Rock, AR 72201 Little Rock, AR 72201
Dear Representative Schexnayder and Senator Bradford:
This is in response to your joint request for an opinion on whether the Arkansas Department of Correction ("Department" or "ADC") can purchase membership in a "cotton gin cooperative" which is capitalized with common stock as a means of ginning and marketing its cotton crop.
You indicate that if the Department joins the cooperative, it becomes a shareholder by buying stock in the cooperative, which is organized under A.C.A. § 2-2-101 et seq. as an "agricultural cooperative association," and becomes a voting member on the board of directors of the association. As a member, you note, the Department would also assume corporate debt for long term financing and shorter term operating loans through the Farm Credit System or other third party lending institutions.
You reference Arkansas Constitution, articles 12, § 7, 12 § 12, and 16 §1, as possible prohibitions against this proposal. You also inquire whether the proposal would violate the "Arkansas Purchasing Law" (A.C.A. §§ 19-11-201 — 260 (Repl. 1994)), and what potential problems with regard to liability and immunity issues would arise if an ADC official served on the cooperative's board of directors.
It is my opinion, although there is no controlling Arkansas precedent interpreting the Arkansas Constitution in this precise situation, that the proposal you outline would in all likelihood be unconstitutional.
In my opinion the constitutional provision which represents the greatest impediment to the proposal is Arkansas Constitution, art. 12, § 7, which provides as follows:
 Except as herein provided, the State shall never become a stockholder in, or subscribe to, or be interested in, the stock of any corporation or association.
There are no Arkansas cases which squarely address or interpret this provision.[1] The language, however, is unambiguous. In purchasing the stock of an "agricultural cooperative association" the Department, clearly an agency of the state expending state-appropriated funds, would "become a stockholder in . . . subscribe to . . . or be interested in, the stock of [an] association."
It may be argued, however, as has been argued successfully in other states, that the purpose of this constitutional provision was to prevent the state from "aiding" private corporations and that in joining the agricultural cooperative, the Department, (the state) would be aiding itself, and that any aid to the association would be merely incidental.See, e.g., Utah State Land Board v. Utah State Land Commission,12 Utah 2d 265, 365 P.2d 213 (1961) (holding that the State Land Board could invest in stocks because such investment wasn't "in aid" of any corporation); and Almond v. Day, 197 Va. 782, 91 S.E.2d 660 (1956) (retirement system may invest in stock because in so doing, it is not investing for the purpose of "aiding the corporation's work").[2] Seealso generally, 81A C.J.S. States, § 208. In each of these cases, however, the constitutional prohibition was expressly against "aiding" corporations or associations. Article 12, § 7 contains no such language. It states merely that the state shall never become a stockholder or be interested in the stock of any association. This prohibition is more similar to the one contained in the Michigan Constitution, as interpreted in Michigan Savings and Loan League v. Municipal Finance Commission,347 Mich. 311, 79 N.W.2d 590 (1956), which provides that "[t]he state shall not subscribe to, nor be interested in the stock of any company, association or corporation." In that case the Michigan court held that a law which allowed school districts (agencies of the state under Michigan law) to invest in building and loan associations violated the constitution, stating:
 Thus the legislative enactment that plaintiffs are asking the Court to sustain designates the investment as a purchase of shares in an incorporated organization. The conclusion may not be avoided that what the legislature has undertaken to say may be done falls squarely within the inhibition of the Constitution. Such being the situation there is but one course open to the Court. We may not ignore the clear mandate of the Constitution.
79 N.W.2d at 595. See also generally, ICMA Retirement Corporation v.Executive Department, 92 Or. App. 188, 757 P.2d 868 (1988) (state cannot invest deferred compensation in "stock fund" because it "owns" the funds for purposes of constitutional prohibition).
It is my opinion, under the plain language of our constitution, that the Department's purchase of stock in the association would therefore be unconstitutional. I should note, however, that "agricultural cooperative associations" are authorized to be organized either with or without capital stock. See A.C.A. § 2-2-104 (1987). If organized without capital stock, members hold only "memberships" in the association. See A.C.A. §2-2-102(2) (1987). Such memberships are not, with certain exceptions, considered "securities" for purposes of Arkansas securities laws. See
A.C.A. § 23-42-503(2) (Repl. 1994). If such memberships are not considered "securities" then they are not perforce considered to be "stock." See A.C.A. § 23-42-102(12)(A).
My conclusion in response to the first part of your question in all likelihood renders the remaining questions moot. Because, however, this is an advisory opinion, we will discuss your remaining questions in a summary fashion.
The provisions of Arkansas Constitution, art 12, § 12, in my opinion, are not as clearly prohibitive of the proposal you outline as art. 12, § 7. The former section provides:
 Except as herein otherwise provided, the state shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense. Nor shall the indebtedness of any corporation to the state ever be released or in any manner discharged save by payment into the public treasury.
As can be seen, this section allows the state to assume the debt or liability of a corporation if the debt was created to "provide for the public welfare." Although certainly a question arises under this provision as to the constitutionality of the Department's proposal, the language of the exception is too general for this provision to stand as a clear prohibition against the proposal. In any event, it is not as clearly prohibitive as art. 12, § 7.
Similarly, the application of art. 16, § 1's prohibition against the state "lending its credit" is not clear. There may be an argument, with regard to the Department's proposal, that the state would be "using" its credit, rather than lending it. Cf. Beaumont v. Faubus, 239 Ark. 594,324 S.W.2d 97 (1965). Again, the prohibition of this section does not stand as clearly as an impediment as does art. 12, § 7.
With regard to your question concerning the Arkansas Purchasing Law, it should be noted that § 19-11-203(14)(H) (Repl. 1994) exempts from this law "[f]arm products procured or sold by a state agency having an agency purchasing official." This subsection also provides that "[t]he current trade customs with respect to the procurement or sale of cotton, cotton seed, rice, and other farm products shall be followed when its is necessary to do so in order to obtain the best price for the commodities procured or sold." The Arkansas Department of Correction does have an agency purchasing official, but for the limited purpose of procuring perishable food items. See A.C.A. § 19-11-221 (Repl. 1994). It may be argued in light of this fact and the language with regard specifically to cotton above, that the ginning and sale of cotton is entirely exempt from the provisions of the Arkansas Purchasing Law.[3] I should note, however, that the Arkansas State Purchasing Director has the authority to adopt rules and regulations consistent with the Arkansas Purchasing Law. Reference to these rules and consultation by the Department with the Office of State Purchasing would be necessary in order to arrive at a definitive answer to this question.
The final question posed concerns the potential problems which might arise in terms of liability of an ADC official who acts in his official capacity as a member of the board of directors of an agricultural cooperative. Directors of such cooperatives can, in some instances, be held personally liable for their actions as board members. Seegenerally, Fee and Hoberg, "Potential Liability of Directors of Agricultural Cooperatives," 37 Ark. Law Rev. 60 (1983). I cannot, in light of the general nature of your question (i.e., without a specific factual scenario), undertake an analysis of when and if an ADC official would be liable for his actions as a member of the board of directors of an agricultural cooperative. Suffice it to say that questions may arise as to whether such official would in all instances maintain the immunity from liability which is granted state officials under A.C.A. §19-10-305(Repl. 1994) for actions occurring within the course and scope of their employment. These questions would have to be addressed by a court presented with all the relevant facts and circumstances.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] There are some Arkansas cases interpreting Arkansas Constitution, art. 12, § 5, which contains a similar prohibition applicable to municipal corporations. The most relevant is Halbert v. Helena-WestHelena Industrial Development Corporation, 226 Ark. 620, 291 S.W.2d 802
(1956), wherein the court held that a city could not constitutionally purchase "membership" in a private nonprofit industrial development corporation because it would be doing indirectly what the constitution forbids to be done directly, i.e. granting financial aid to the corporation. The facts are distinguishable from those at hand, however, because the Department would not be purely granting "aid" to the agricultural cooperative. Rather, it would be purchasing stock to help itself gin and market its cotton.
[2] Other cases involving the investment of particular funds, such as retirement system funds and the funds of housing authorities, have held that purchases of stock did not violate the constitution because the funds at issue were not really "state" funds, but were rather, for example, held in trust for retirees. See, e.g., Louisiana StateEmployee's Retirement System v. State, 423 So.2d 73 (La. 1982) and Steupv. Indiana Housing Finance Authority, 273 Ind. 72, 402 N.E.2d 1215
(1980).
[3] This law provides generally for competitive bidding requirements in many instances in the procurement of commodities and services. It also applies to the "disposal" of state commodities. See A.C.A. §19-11-207(a).